## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

> Plaintiff,

vs.                                                              No. CR 05-1619 JB

JOSE ANTONIO COS,

> Defendant.

### MEMORANDUM OPINION

**THIS MATTER** comes before the Court on the Motion to Reconsider Order of Suppression on Grounds of the Good Faith Exception, filed May 18, 2006 (Doc. 56). The Court held a hearing on this motion on June 6, 2006. The primary issue is whether the good-faith exception allows the introduction of evidence that the Court previously suppressed. Because the United States Court of Appeals for the Tenth Circuit has indicated that the good-faith exception does not apply in the absence of a search warrant, the Court will deny the motion to reconsider.

The Court entered an order denying the motion on June 8, 2006 (Doc. 64). In footnote 1 of that Order, the Court promised to issue a memorandum opinion explaining the reason for its decision.

### PROCEDURAL BACKGROUND

On November 2, 2005, the Court held an evidentiary suppression hearing on Defendant Jose Antonio Cos' motion to suppress evidence obtained during a warrantless search of his apartment.[1] In a Memorandum Opinion and Order filed on April 25, 2006 (Doc. 44), the Court granted the motion to suppress, finding that: (i) the police officers who searched Cos' apartment did not

---

[1] For a more complete factual and procedural history of this case and of Cos' Motion to Suppress, see Memorandum Opinion and Order at 2-10, filed April 25, 2006 (Doc. 44).

reasonably believe that Cos was in the apartment; and (ii) the woman who consented to the search of Cos' apartment, Feather Ricker, did not have actual or apparent authority to consent to the search. See Memorandum Opinion and Order at 18-31 (Doc. 44). Thereafter, the United States twice moved the Court to reconsider its order suppressing evidence and to deny the motion to suppress. See First Motion to Reconsider, filed April 26, 2006 (Doc. 46); Second Motion to Reconsider, filed May 1, 2006 (Doc. 50). In its Second Motion to Reconsider, the United States stated that it "would like the district court to consider the 'good faith exception.' Here, the officers acted reasonably and obtained a search warrant after discovering the firearm." Second Motion to Reconsider at 2.

In a Memorandum Opinion and Order, the Court affirmed its prior ruling. See generally Memorandum Opinion and Order, filed May 17, 2006 (Doc. 55). Addressing the United States' good faith argument, the Court noted:

> The United States did not argue this ground in either its response to the motion to suppress or at the suppression hearing. To consider such an argument at this late date, especially when the United States fails to explain in its supplemental motion why the exception applies to this case, would be unfair to Cos and promote a waste of judicial resources in allowing parties a second chance to argue that which they should have raised the first time.

Id. at 28-29. The Court further explained that it "does not see, on its own and without the benefit of any argument by the United States, why the good-faith exception would apply in this case," because the Tenth Circuit, in the recent case United States v. Herrera, 444 F.3d 1238 (10th Cir. 2006), held that the good-faith exception "applies only narrowly, and ordinarily only where an officer relies, in an objectively reasonable manner, on a mistake made by someone other than the officer." Id. at 1249. The Court determined that, in this case, "the mistake that led the police officers into Cos' apartment – that Ricker had authority to consent – was one that they, not a neutral third party

like a magistrate, made." Memorandum Opinion and Order at 30 (Doc. 55). Nevertheless, the Court stated that, "[i]f the United States truly believes that the good-faith exception may save the evidence from exclusion, it may file a motion setting forth its reasons with more particularity and specificity." Id.

The United States has now filed a third motion to reconsider, arguing that the good-faith exception provides the key to the admission of the suppressed evidence. The United States relies on United States v. McClain, 430 F.3d 299 (6th Cir. 2005), to establish that good-faith reliance on a warrant can validate a search even if a constitutional violation, committed by the police officers themselves, preceded the issuance of the warrant. See Third Motion to Reconsider at 3. The United States further argues that any mistake was committed not by the police officers, but by Ricker, the woman who allowed the police officers to enter Cos' apartment. See id. at 3-4. Cos contends in response that the Tenth Circuit foreclosed the United States' argument in United States v. Scales, 903 F.2d 765 (10th Cir. 1990). See Response at 3-5, filed May 25, 2006 (Doc. 58).

## LAW REGARDING THE GOOD-FAITH EXCEPTION

As early as 1914, the Supreme Court held that "in a federal prosecution the Fourth Amendment bar[s] the use of evidence secured through an illegal search and seizure." Mapp v. Ohio, 367 U.S. 643, 648 (1961)(citation and internal quotations omitted). The Supreme Court later explained that the exclusionary rule "operates as a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." United States v. Leon, 468 U.S. 897, 906 (1984)(citations and internal quotations omitted). Expounding on the exclusionary rule's deterrent purpose, the Supreme Court instructed that it "necessarily assumes that the police have engaged in willful, or at the very least

-3-

negligent, conduct which has deprived the defendant of some right.  By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused."  United States v. Peltier, 422 U.S. 531, 539 (1975)(citation and internal quotations omitted).

More than twenty years after announcing the exclusionary rule, the Supreme Court articulated the good-faith exception to it in United States v. Leon.  The Supreme Court ruled that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion."  United States v. Leon, 468 U.S. at 922.

As the Tenth Circuit has interpreted the good-faith exception, "[t]he good faith exception to the exclusionary rule, as set out in [United States v. Leon], provides that where police officers act in reasonable reliance on a search warrant, issued by a detached and neutral magistrate but ultimately found to be defective, the evidence so obtained should not be excluded."  United States v. Scales, 903 F.2d at 767 (citation omitted).  Exploring the rationale for the good-faith exception, the Tenth Circuit stated:

> The rationale for this rule addresses the deterrent effect the exclusionary rule has both on judges and magistrates, and on law enforcement officers.  The Court observed that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates."  The Court also concluded that there is no evidence suggesting that judges and magistrates are inclined to evade the Fourth Amendment, and that it could "discern no basis . . . for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate."  Finally, Leon reasoned that where an officer has acted in good faith pursuant to a warrant, "there is [in most cases] no police illegality and thus nothing to deter. . . .  Penalizing the officer for the magistrate's error, rather than his [or her] own, cannot logically contribute to the deterrence of Fourth Amendment violations."

Id. at 767-68 (quoting United States v. Leon, 468 U.S. at 916, 920-21)(alterations and ellipses in

original).  Applying the good-faith exception, the Tenth Circuit has "decline[d] to extend the holding of <u>Leon</u> to cases in which the good faith of the officer [who conducts the search] cannot be presumptively established by the existence of a search warrant valid on its face."  <u>Id.</u> at 768.

Recently, the Tenth Circuit has confronted the good-faith exception anew.  In <u>United States v. Herrera</u>, the Tenth Circuit explained that "[t]he Supreme Court, although expanding the good-faith exception's application a bit beyond the facts of <u>Leon</u>, has still limited that exception to circumstances where someone other than a police officer has made the mistaken determination that resulted in the Fourth Amendment violation. . . . Thus, this court has applied the good-faith exception primarily when, as in <u>Leon</u>, the officers involved in a seizure or search have acted in an objectively reasonable manner by relying on a warrant issued by a neutral and detached magistrate."  444 F.3d at 1249.  The Tenth Circuit indicated that it has never "extended <u>Leon</u> to a case where it was the officer's mistake, rather than that of a neutral third party, that resulted in a Fourth Amendment violation."  <u>Id.</u> at 1251.  The Tenth Circuit commented that "<u>Leon</u>'s focus on deterring police conduct requires that <u>Leon</u>'s good-faith exception almost always applies only when there is a determination made by a third party upon which the officer reasonably relied to conduct the challenged seizure or search."  <u>Id.</u> at 1253.

## ANALYSIS

The Court will deny the United States' Third Motion to Reconsider.  The Tenth Circuit has already rejected, in <u>United States v. Scales</u>, the rule that the United States requests the Court adopt, and the Tenth Circuit's decision in <u>United States v. Herrera</u> further supports the Court's conclusion.  The case on which the United States almost exclusively relies is a case from the United States Court of Appeals for the Sixth Circuit that is in conflict with Tenth Circuit law.  Moreover, the facts of this case do not fall under one of the four exceptions to the good faith exception, because the good-faith

exception does not shield the evidence from the exclusionary rule in the first place.  Finally, excluding the evidence in this case furthers the exclusionary rule's purpose of deterring unconstitutional searches.

I.      **UNITED STATES V. SCALES AND UNITED STATES V. HERRERA CONTROL THIS CASE.**

In United States v. Scales, two Drug Enforcement Administration ("DEA") agents encountered Quinton Scales on an Amtrak train in Albuquerque, New Mexico.  See 903 F.2d at 766. The agents asked Scales about his luggage, because he was shaking and looking around the coach car.  See id.  Scales opened his bags, and the agents observed packages wrapped in a way similar to that used by drug traffickers.  See id.  The agents were suspicious of Scales' story that the packages contained china because of the packages' light weight and absence of rattling when shaken.  See id. The agents left the train without searching the luggage, because they felt that they did not have probable cause.  See id.

The agents returned to their Albuquerque office and checked Scales' criminal record, discovering that he had been arrested and sentenced on a drug possession charge even though Scales had told the agents that he had only been arrested for a gun charge and for a robbery charge.  See id. Armed with this information, the agents hopped aboard the train at its next stop, in Las Vegas, New Mexico, and took Scales' luggage, leaving him with a receipt.  See id.  Neglecting to coordinate their activities with the conductor, the agents learned that the train had left the station and that they could not disembark until the train made its next stop at Raton, New Mexico.  See id. at 766-67.  When the agents arrived at a penitentiary in Santa Fe, New Mexico, later that night, a drug-sniffing dog alerted to the presence of drugs in the luggage.  See id. at 767.  After obtaining a search warrant, the agents

uncovered more than 2,000 grams of cocaine.  See id.  The district court upheld the admissibility of

the drugs at trial on the basis of the good-faith exception.  See id.

The Tenth Circuit rejected the United States' argument that the agents' good faith in taking

the luggage away from Scales did not redeem their unreasonably long seizure of the luggage; it took

seven hours for the agents to conduct the dog sniff and twenty-four hours to obtain the search

warrant.  See id. at 768-69.  The Tenth Circuit explained:

> The specific holding of Leon does not apply to the facts of this case, nor is the
> rationale behind it present here. When the DEA agents seized the suitcase and held
> it for more than twenty-four hours before obtaining a search warrant, they were not
> acting pursuant to a warrant subsequently deemed invalid. The "illegality" which
> arguably existed here was not a function of the agents' good faith reliance on a
> presumptively valid warrant. Moreover, the search of the suitcase *after* the search
> warrant was issued does not prevent us from evaluating the agents' behavior *prior* to
> that time.

Id. (emphases in original).  Because the good-faith exception did not validate the search, the Tenth

Circuit indicated that the search must be valid under other Fourth Amendment principles:

> We too decline to extend the holding of Leon to cases in which the good faith of the
> officer cannot be presumptively established by the existence of a search warrant valid
> on its face. Because the DEA agents were not acting in reliance on a search warrant
> when they seized the luggage and held it for more than twenty-four hours, Leon does
> not ratify their actions. We therefore must analyze those actions according to the
> dictates of Fourth Amendment law.

Id.

The Tenth Circuit's holding in United States v. Scales has a direct bearing on this case.  In

both cases, law enforcement violated the defendant's Fourth Amendment rights.  In United States v.

Scales, the agents held onto the defendant's luggage for an unreasonable period, see 903 F.2d at 767-

70; in this case, the police officers entered Cos' apartment without consent by a person with actual

or apparent authority to allow entry, and the police officers did not have reason to believe that Cos

-7-

was in the apartment.  See Memorandum Opinion and Order at 18-32 (Doc. 44).  Also, the agents in United States v. Scales did not have a search warrant when the constitutional violation, the unreasonably long seizure of the luggage, occurred.  See 903 F.2d at 768.  Likewise, the police officers here did not have a search warrant when they entered Cos' apartment.  See Memorandum Opinion and Order at 2 (Doc. 44).  Just as in United States v. Scales, where the Tenth Circuit concluded that the United States could not save the illegally obtained evidence because there was no good-faith reliance on a search warrant, so, too, the Court determines that the exclusionary rule bars the illegally obtained evidence in this case because the police officers did not rely in good faith on a search warrant when entering Cos' apartment.

The Tenth Circuit's decision in United States v. Herrera confirms the Court's resolution of the United States' motion.  As recounted in the Court's Memorandum Opinion and Order (Doc. 55) denying the United States' First and Second Motions to Reconsider, United States v. Herrera involved a police officer who erroneously stopped what he believed to be a commercial vehicle for an administrative inspection and found a controlled substance during the search.  See 444 F.3d at 1240-42.  The United States asked the Tenth Circuit to extend the good-faith exception to the facts of United States v. Herrera, because the police officer believed in good faith that he was stopping a commercial vehicle.  See id. at 1249.  The Tenth Circuit declined to extend the good-faith exception, because the "good-faith exception applies only narrowly, and ordinarily only where an officer relies, in an objectively reasonable manner, on a mistake made by someone other than the officer."  Id.  The Tenth Circuit explained that it "has applied the good-faith exception primarily when, as in Leon, the officers involved in a seizure or search have acted in an objectively reasonable manner by relying on a warrant issued by a neutral and detached magistrate."  Id.  While the Supreme Court has extended

the good-faith exception to reliance in good faith on a statute's regulatory scheme that permits warrantless administrative searches, and to reliance on "a police record indicating the existence of an outstanding arrest warrant, if that error was made by a court clerk's employee rather than a police officer," neither of those situations applies here.  Id. at 1250.  The Tenth Circuit stated that it has never "extended Leon to a case where it was the officer's mistake, rather than that of a neutral third party, that resulted in a Fourth Amendment violation."  Id. at 1251.  In United States v. Herrera, it was the police officer who incorrectly determined that the vehicle was commercial and subject to an administrative inspection; the good-faith exception did not apply because the officer relied on his own mistake rather than that of a neutral third party.  See id. at 1249.

As the Court noted in its Memorandum Opinion and Order (Doc. 55), like the mistake that the state trooper made in United States v. Herrera, "the mistake that led the police officers into Cos' apartment – that Ricker had authority to consent – was one that they, not a neutral third party like a magistrate, made.  As a result, the good-faith exception does not seem to apply in this case."  Id. at 30.  The United States objects to this reasoning on two grounds.  First, it argues that United States v. Herrera is distinguishable from this case, because in this case, "after the Defendant's firearm was discovered, the officers obtained a search warrant that was approved by a state district court judge who found no problem with the preceding conduct that uncovered the evidence of the firearm.  In Herrera, there was no search warrant; the search at issue was a warrantless administrative search and seizure."  Third Motion to Reconsider at 3.

The United States' argument raises a distinction without a difference.  While it is true that a state district court judge issued a search warrant after the constitutional violation occurred, the Tenth Circuit has expressed that the issuance of a search warrant does not preclude district courts from

peering back at events before the search warrant to determine if a constitutional violation has taken place.  See United States v. Scales, 903 F.2d at 768 ("Moreover, the search of the suitcase *after* the search warrant was issued does not prevent us from evaluating the agents' behavior *prior* to that time." (emphases in original)).  In addition, United States v. Herrera did not base its decision about the good-faith exception on the fact that it was an administrative search case; instead, the rule it announced is that, to receive the benefit of the good-faith exception, the mistake that led to the constitutional violation must have been made by someone other than the law enforcement officer. See 444 F.3d at 1249 ("Leon's good-faith exception applies only narrowly, and ordinarily only where an officer relies, in an objectively reasonable manner, on a mistake made by someone other than the officer.").  While the Tenth Circuit stated, as an *additional* reason to suppress the evidence, that the good-faith exception should not apply to an administrative search because there is nothing, in that situation, to give notice to the party being searched that he or she is subject to a warrantless inspection, this conclusion did not alter the Tenth Circuit's holding that the good-faith exception "almost always applies only when there is a determination made by a third party upon which the officer reasonably relied to conduct the challenged seizure or search." Id. at 1253-54 ("Herrera never had any notice that a state trooper would have even facially valid authority to stop him to conduct a random administrative inspection. That is because Herrera was not in fact operating in a pervasively regulated industry such that he could not help but be aware that he and his truck were subject to search.  For this reason, *as well*, we decline to apply Leon's good-faith exception so far afield from that exception's origin." (emphasis added)(citation and internal quotations omitted)).

Next, the United States attempts to distinguish this case from United States v. Herrera by contending that Ricker, not the police officers, made the mistake that resulted in the Fourth

Amendment violation.  <u>See</u> Third Motion to Reconsider at 3-4.  The United States asserts that Ricker

"answered the door and allowed the officers into the apartment, thinking that she had the authority

to allow the officers entry."  <u>Id.</u> at 4.  The United States, however, has not presented evidence – other

than when she opened the door and got out of the officers' way – indicating that Ricker thought she

had authority to allow the police officers to enter.  Instead, the taped conversation between Ricker

and Detective Chase Mayhew shows that Ricker believed that she did not have authority over the

apartment; Mayhew asked Ricker if Cos left her in charge of the apartment, to which Ricker

responded: "*Not in charge*. He said he was gonna go get us. . . ." Memorandum Opinion and Order

at 8 (Doc. 44)(emphasis added).  Nor did Ricker state, when she let the police into the apartment,

that she had the power to do so.  <u>See id.</u> at 5-6.  Even if Ricker mistakenly assumed that she had the

authority to consent to a search of Cos' apartment, the police officers themselves still mistakenly

believed that she had such authority and entered Cos' apartment on that basis.

## II.    <u>UNITED STATES V. SCALES</u>, NOT <u>UNITED STATES V. MCCLAIN</u>, CONTROLS THIS CASE.

To support its argument that the good-faith exception should apply to this case, the United

States relies almost exclusively on a Sixth Circuit case: <u>United States v. McClain</u>.  The officers in

<u>United States v. McClain</u> initially responded to a call concerning a suspicious incident at a house that

had been vacant for several weeks.  <u>See</u> 430 F.3d at 302.  Seeing a light on inside the house, a

neighbor had called the police.  <u>See id.</u>  The officers eventually entered the house and moved from

room to room before moving to the basement, where they discovered evidence of a marijuana grow

operation.  <u>See id.</u> at 302-03.  This discovery prompted law enforcement to obtain search warrants

for a marijuana grow operation at the house and at other residences linked to the defendants.  <u>See id.</u>

at 303.  Based on evidence that law enforcement obtained from these searches, the United States

indicted the defendants on various drug-related charges.  See id.

The Sixth Circuit concluded that the initial warrantless entry into the residence violated the

Fourth Amendment.  See id. at 306.  Even though the evidence discovered during that entry formed

the basis of the subsequently obtained search warrant, making the warrant itself "fruit of the

poisonous tree," the Sixth Circuit held that the police officers' good faith reliance on the warrant

precluded application of the exclusionary rule.  Id. at 306-09.  The United States seeks to apply the

Sixth Circuit's logic in this case, and asks the Court to find that the search warrant that Mayhew

subsequently secured validates the police officers' seizure of the gun.  See Third Motion to

Reconsider at 1-2.

The Tenth Circuit, however, already decided in United States v. Scales that the good-faith

exception does not save evidence obtained under a warrant when a constitutional violation tainted

the warrant application.  See 903 F.2d at 768-69.  Indeed, the dissent to the Sixth Circuit's denial of

the petition for rehearing en banc noted that United States v. McClain conflicted with the Tenth

Circuit's decision in United States v. Scales.  See 444 F.3d 537, 548 (6th Cir. 2006)(Martin, J.,

dissenting).

> The Tenth Circuit has addressed this issue as well.  In United States v. Scales, 903
> F.2d 765, 768 (10th Cir. 1990), the court considered whether a prior illegal seizure
> could be used in a warrant to support a probable cause determination for the issuance
> of a search warrant.  The court answered, as have the Second, Ninth, and Eleventh
> Circuits, as well as this Court in [United States v. Davis, 430 F.3d 345 (6th Cir.
> 2005)], in the negative.

Id.  Here, the unconstitutional seizure of the gun tainted the later-filed warrant application.  While

the Tenth Circuit may reverse United States v. Scales or harmonize its case law with the Sixth Circuit,

that is the Tenth Circuit's, and not this Court's, prerogative.  Until the Tenth Circuit says otherwise,

the Court is bound by the Court of Appeals' past rulings, including United States v. Scales.

Besides, even if the Tenth Circuit adopted the Sixth Circuit's rule, the Sixth Circuit noted that

an important fact in United States v. McClain was that "the officers who sought and executed the

search warrants were not the same officers who performed the initial warrantless search."  430 F.3d

at 308.  In this case, Mayhew was one of the officers who initially entered Cos' apartment without

a warrant, and he was also the police officer who later obtained the search warrant.  See

Memorandum Opinion and Order at 4, 8-9 (Doc. 44).

## III.    THE FOUR EXCEPTIONS TO THE GOOD-FAITH EXCEPTION DO NOT APPLY.

In United States v. Danhauer, 229 F.3d 1002 (10th Cir. 2000), the Tenth Circuit restated the

good-faith exception as applying "if the executing officer acted with an objective good-faith belief

that the warrant was properly issued by a neutral magistrate."  Id. at 1006.  The Tenth Circuit then

explained that United States v. Leon recognized "four situations in which an officer would not have

reasonable grounds for believing a warrant was properly issued."  Id. at 1007 (citation omitted).

Those four exceptions are: (i) "the issuing magistrate was misled by an affidavit containing false

information or information that the affiant would have known was false if not for his 'reckless

disregard of the truth'"; (ii) the issuing magistrate wholly abandoned his or her judicial role; (iii) "the

affidavit in support of the warrant is 'so lacking in indicia of probable cause as to render official belief

in its existence entirely unreasonable'"; and (iv) the warrant is "so facially deficient that the executing

officer could not reasonably believe it was valid."  Id. (citations omitted).  The United States contends

that the evidence in this case should not be suppressed because this case does not fall into one of

these four situations.

The United States' argument misses the mark, because these four situations are exceptions to the good-faith exception.  The four exceptions assume that the good-faith exception applies, in the first place, because a search warrant exists.  See id. at 1006-07.  The four exceptions limit the application of the good-faith exception, even though a magistrate has issued a search warrant, when any of those circumstances exists.  See id.  In those situations, a police officer cannot reasonably believe that the search warrant is sufficient to validate the search, and so the exclusionary rule should still be in effect.  See United States v. Leon, 468 U.S. at 922-23 ("Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." (citing Harlow v. Fitzgerald, 457 U.S. 800, 815-819 (1982)).  It is therefore not surprising that this case does not fit into one of the four exceptions to the good-faith exception – the good-faith exception does not come into play in this case from the start because the police officers entered Cos' apartment without a search warrant.  In effect, the United States asks the Court to fit a square peg into a round hole. Because the good-faith exception does not shield the officers' actions in this case, the four exceptions to the good-faith exception also do not apply.

## IV.    EXCLUSION OF THE EVIDENCE IN THIS CASE WILL DETER ILLEGAL POLICE CONDUCT.

In United States v. Herrera, the Tenth Circuit advised that the good-faith exception applied, beyond the strictures that the Supreme Court and the Tenth Circuit have set forth, "where the exclusion of the illegally obtained evidence would not deter illegal police conduct." 444 F.3d at 1253. This rationale accords with the exclusionary rule's primary purpose, which is to deter law

enforcement from violating constitutional rights by letting them know, from the outset, that illegally seized evidence will not be admitted against a defendant.  <u>See</u> <u>United States v. Leon</u>, 468 U.S. at 906; <u>United States v. Peltier</u>, 422 U.S. at 539; <u>United States v. Scales</u>, 903 F.2d at 767-68.

If the United States means to argue that the facts of this case are so unusual that they warrant a departure from the Supreme Court and Tenth Circuit's case law,  the Court concludes that it should still suppress the disputed evidence because exclusion of the illegally seized weapon will deter illegal police conduct, thereby promoting the underlying purpose of the exclusionary rule.  Although the United States contends that there was no police misconduct in this case, the Court already determined, in its first Memorandum Opinion and Order, that the police officers did not act in an objectively reasonable manner when they entered Cos' apartment based on permission granted by a woman of whom the police officers knew virtually nothing.  <u>See</u> Memorandum Opinion and Order at 28-31 (Doc. 44).  Precluding use of the evidence obtained during the search of Cos' apartment will deter future police officers from entering a residence without clearing up ambiguities as to the occupant's relationship to the apartment, which the Tenth Circuit requires.  <u>See</u> <u>id.</u> at 16-18 ("'Warrantless entry is unlawful without further inquiry if circumstances make it unclear whether the property about to be searched is subject to mutual use by the person giving consent.'").  This duty does not oblige police officers to nail down with absolute certainty who answers the door in any given situation; instead, it asks police officers to act in a reasonable manner when requesting if they can enter a person's home to look for evidence.  <u>See</u> <u>id.</u>  By removing from the prosecutor's arsenal evidence acquired unreasonably in this case, the Court will promote deterrence of future misconduct and thereby further the goal of the exclusionary rule.

**IT IS ORDERED** that the Motion to Reconsider Order of Suppression on Grounds of the

Good Faith Exception is denied.


_____
UNITED STATES DISTRICT JUDGE


*Counsel*:

David C. Iglesias
  United States Attorney for the District of
    New Mexico
David M. Walsh
  Assistant United States Attorney for the District of
    New Mexico
Albuquerque, New Mexico

        *Attorneys for the United States*

Margaret A. Katze
  Assistant Federal Public Defender
Albuquerque, New Mexico

        *Attorney for the Defendant*