## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                    No. CR 05-1619 JB

JOSE ANTONIO COS,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the United States' Memorandum on Due

Process Implications of Defendant's Pretrial Detention, filed October 23, 2006 (Doc. 87)("United

States' Due Process Brief"); and (ii) Defendant's Memorandum Brief Regarding Due Process in

Support of Release Pending Government Appeal, filed October 24, 2006 (Doc.88)("Cos' Due

Process Brief").  The Court held a hearing on the due process issue on October 30, 2006.  The

primary issue is whether the Court should release Defendant Jose Antonio Cos because continued

pre-trial custody violates due process.  Because the Court believes that Cos' continued detention

does not, at this time, violate due process, the Court finds that Cos' detention remains constitutional.

## FACTUAL BACKGROUND

On June 25, 2005, Albuquerque Police Department officers discovered a firearm at Cos'

residence while executing a state arrest warrant for kidnaping, aggravated assault, and aggravated

assault with a deadly weapon.  See Memorandum Opinion and Order at 7, filed April 25, 2006 (Doc.

44)("Court's Suppression Opinion"); Transcript of Evidentiary Hearing at 44:15-16 (taken

November 2, 2005)("Suppression Hearing Transcript).[1]  The incident underlying the state warrant involved Cos allegedly brandishing a knife at his ex-girlfriend and a male individual, while the two took cover inside a parked car.  See Court's Suppression Opinion at 2; Suppression Hearing Transcript at 7:21-25.

## PROCEDURAL BACKGROUND

Pursuant to the police officers' discovery of the firearm, the United States charged Cos with possession of a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2).  See Indictment, filed July 27, 2005 (Doc. 8).  Cos has been detained, and in government custody, since his arrest on June 29, 2005.  See United States v. Cos, No. 06-2244, 2006 U.S. App. LEXIS 25136, at *3 (10th Cir. Oct. 4, 2006).[2]  The Honorable Don J. Svet, United States Magistrate Judge, ordered Cos to be detained on July 5, 2005.  See Order of Detention, filed July 5, 2005 (Doc. 7).

Cos filed a motion to suppress evidence against him on September 30, 2005, and requested an evidentiary hearing on the motion.  See Defendant's Motion to Suppress at 6, filed September 30, 2005 (Doc. 19)("Motion to Suppress").  The United States filed its response on October 18, 2005. See Response to Defendant's Motion to Suppress, filed October 18, 2005 (Doc. 20).  Cos did not file a reply to the United States' response, and the Court held an evidentiary hearing on November 2,

---

[1]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

[2]The Tenth Circuit Rule 36.3(B) states: "Citation to an unpublished decision is disfavored. But an unpublished decision may be cited to if: (i) it has persuasive value with respect to a material issue that has not been addressed in a published opinion; and (ii) it would assist the court in its disposition."  This unpublished decision meets both these criteria, and the rules therefore allow citation to this unpublished decision.  Moreover, the Tenth Circuit's Order and Judgment are binding precedent under the doctrine of law of the case.

2005.  The Court granted Cos' motion to suppress on April 25, 2006.  <u>See</u> Court's Suppression Opinion.  The Court expended considerable effort to provide a well-reasoned memorandum opinion and order granting Cos' motion to suppress.

The United States filed three motions for the Court to reconsider its ruling on Cos' motion to suppress.  <u>See</u> Motion to Reconsider Order Suppressing Evidence, filed April 26, 2006 (Doc. 46)("Motion to Reconsider"); Supplemental Motion to Reconsider, filed May 1, 2006 (Doc. 50)("Second Motion to Reconsider"); Motion to Reconsider Order of Suppression on Grounds of the Good Faith Exception, filed May 18, 2006 (Doc. 56)("Third Motion to Reconsider").  The Court discussed the first two motions with the parties at a hearing on May 1, 2006, and held a hearing on the third motion on June 6, 2006.  The Court carefully considered each of the United States' motions and issued two opinions denying each.  <u>See</u> Memorandum Opinion and Order, filed May 17, 2006 (Doc. 55)(denying the United States' first two motions to reconsider); Memorandum Opinion and Order, filed June 14, 2006 (Doc. 66)(denying the United States' third motion to reconsider).  In response to the Court's disposition on its motions to reconsider, the United States filed a notice of interlocutory appeal on June 29, 2006.  <u>See</u> Notice of Appeal, filed June 29, 2006 (Doc. 68).

The United States Court of Appeals for the Tenth Circuit notified the parties on July 19, 2006 that briefing on the merits of the United States' appeal was tolled, and ordered the parties to file briefs regarding whether the United States' filing of its appeal was timely "where it was filed more than 30 days after entry of the district court order denying the government's first motion for reconsideration."  <u>See</u> <u>United States v. Cos</u>, No. 06-2187, Order at 2, filed July 19, 2006 (10th Cir.).  On September 25, 2006, however, the Tenth Circuit reserved judgment on the jurisdictional issue, and indicated that the matter would be referred to the panel assigned to hear the appeal's merits.  <u>See</u>

United States v. Cos, No. 06-2187, Order at 1, filed September 25, 2006 (10th Cir.).  The outcome

of the United States' appeal is pending before the Tenth Circuit; the United States represents that the

Tenth Circuit has scheduled oral argument in the case for January 2007.  See Transcript of Hearing

at 26:20-22 (taken October 30, 2006)("Transcript").

      After the United States appealed the Court's suppression order, Cos filed a motion for release

pending the outcome of that appeal.  See Defendant's Motion for Release Pending Appeal by the

Government, filed July 25, 2006 (Doc. 74).  The Court denied Cos' motion on August 14, 2006.  See

Memorandum Opinion and Order, filed August 14, 2006 (Doc. 78)("Court's August 14 Order").  On

August 28, 2006, Cos filed a notice of interlocutory appeal of the Court's denial of his request for

release.  See Notice of Appeal, filed August 28, 2006 (Doc. 80).

      The Tenth Circuit filed its Order and Judgment on Cos' appeal of this Court's detention order

on October 4, 2006.  See United States v. Cos, 2006 U.S. App. LEXIS 25136.  The Tenth Circuit

agreed with this Court that Cos was both a flight risk and a danger to the community.  See id. at *12.

The Tenth Circuit indicated, however, that because of the length of Cos' detention, the Due Process

Clause required greater justification for his continued detention, and remanded the case for the Court

to consider three factors: (i) the length of detention; (ii) the extent of the prosecution's responsibility

for the delay in resolution of this case; and (iii) the strength of the evidence supporting detention.

See id. at *14 (citing United States v. Millan, 4 F.3d 1038, 1043-1047 (2d Cir. 1993)).

      The case is now on remand for the Court to consider the due process implications of Cos'

pretrial detention.   To assist the Court, the United States and Cos have each submitted a

memorandum addressing the due process implications of Cos' pretrial detention.

## DUE PROCESS IMPLICATIONS OF PRETRIAL DETENTION

Although liberty is the norm in our society, and "detention prior to trial or without trial is the carefully limited exception,"  an individual charged with serious felonies may be detained before trial when, after an adversary hearing, the individual is found "to pose a threat to the safety of individuals or to the community which no condition of release can dispel." United States v. Salerno, 481 U.S. 739, 755 (1987).  When assessing the validity of a pretrial detention, the central issue is the detainee's right, in accordance with due process, to be free from punishment before the adjudication of guilt.  See Bell v. Wolfish, 441 U.S. 520, 535 (1979); Littlefield v. Deland, 641 F.2d 729, 731 (10th Cir. 1981).  Permissible pretrial detention serves a regulatory, as opposed to a punitive, purpose, but even "valid pretrial detention assumes a punitive character when it is prolonged significantly." United States v. Theron, 782 F.2d 1510, 1516 (10th Cir. 1986).  Nevertheless, while the length of detention is an important factor in a court's due process analysis, "no case has established an absolute outside limit" on what comprises a constitutional period.  United States v. Bernhardt, No. 97-1391, 1997 U.S. App. LEXIS 35295, at *5 (10th Cir. Dec. 16, 1997).

Courts that have considered the due process implications of a pretrial detention, have typically focused on three factors: (i) the length of confinement and any non-speculative expected confinement; (ii) the government's responsibility for delays in the proceedings; and (iii) the strength of evidence supporting detention.  See United States v. Millan, 4 F.3d at 1043.  In addition, some courts have added, as an additional factor, a comparison between the length of the likely sentence the defendant faces and the length of pretrial detention.  See United States v. Cos, 2006 U.S. App. LEXIS 25136, at **12-13; United States v. Shareef, 907 F. Supp. 1481, 1484 (D. Kan. 1995)("The court believes that it is also appropriate to consider the potential terms of imprisonment to which the

defendants may be sentenced if ultimately found guilty of the charges as compared to the prospective length of pretrial detention in determining whether the due process rights of a person may be violated.").

As the Tenth Circuit recognized in its order and judgment remanding this case, because of these due process concerns, to justify an extended detention, the government must prove more than what 18 U.S.C. § 3142 requires to justify an initial detention. See United States v. Cos, 2006 U.S. App. LEXIS 25136, at **13-14 (quoting United States v. Acetturo, 783 F.2d 382, 388 (3d Cir. 1986), and citing United States v. Shareef, 907 F.Supp. at1483-84).  The government's burden is even heavier where the district court has issued an order suppressing all the government's evidence. United States v. Shareef, 907 F.Supp. at 1485 ("[W]hen the admissibility of all evidence against defendants is questionable, . . . prolonged pretrial detention must be subjected to more careful scrutiny than might otherwise be required.").

## ANALYSIS

The United States contends that Cos should remain in custody because his pretrial detention has not violated the due process clause.  Cos contends that his extended detention violates due process, because: (i) the excessive length of his detention has caused it to become punitive in character; (ii) the United States' litigation tactics are the primary reason for the significant delay in the resolution of this case; (iii) the evidence upon which detention is based is weak; and (iv) Cos has already served a significant portion of any sentence which he may ultimately face.  Cos argues that the Court should order his release with appropriate conditions.

The Court does not agree with Cos' analysis.  Evaluation of the factors set forth in United States v. Millan, and referenced in the Tenth Circuit's order and judgment remanding this case, leads

to the conclusion that Cos' detention -- at this time -- remains constitutional in light of the reasons for his detention.  The detention has not yet become punitive, and therefore Cos' pretrial detention has not yet violated the due process clause.  The Court concludes that Cos should remain in custody at this time.

1.      **Burden of Proof.**

The first issue is who bears the burden of establishing or disproving that a due process violation has occurred.  The Tenth Circuit has held that, pursuant to 18 U.S.C. § 3142(e), once the presumption arises that no conditions of release will ensure the defendant's appearance and the community's safety, the burden of production, but not persuasion, shifts to the defendant.  See United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991); United States v. Cook, 880 F.2d 1158, 1162 (10th Cir. 1989).  The Court has already found, and the Tenth Circuit has agreed, that Cos' continued detention is warranted under 18 U.S.C. § 3142.  The Court must now satisfy itself that, consistent with the factors relevant to constitutional analysis enumerated in United States v. Millan, Cos' detention does not violate due process.

At the hearing following the Tenth Circuit's remand, the United States could not tell the Court with certainty which party held the burden of proof with regard to the due process issues.  See Transcript at 3:7-11 (Walsh).  Cos' counsel stated that she believed the United States bore the burden of proof that Cos' detention did not violate due process, and that the burden was subject to a clear and convincing evidence standard.  See id. at 3:20 - 4:2 (Katze).  Cos' counsel stated that she believed this was the standard that the United States Court of Appeals for the Second Circuit employed in United States v. Millan.  See Transcript at 3:22 - 4:5.

The Second Circuit's opinion in United States v. Millan does not address the burden of proof

issue with respect to the court's due process analysis.  Rather, the Second Circuit states that, "[t]o determine whether the length of pretrial detention has become constitutionally excessive, we must weigh three factors." 4 F.3d at 1043.  The Second Circuit does not discuss whether the United States or the defendant bears the burden of proof with respect to the enumerated factors, or how each of these factors weigh with respect to each other.

In researching this issue, the Court has found only one judicial opinion considering which party bears the burden of proof when a court reviews the constitutionality of a pretrial detention.  In United States v. Motamedi, 767 F.2d 1403 (9th Cir. 1985), the Honorable Robert Boochever, United States Circuit Judge, concurring and dissenting in part, argued that the "concept of a burden of proof is embodied in the due process clause, and . . . 'serves to allocate the risk of error between the litigants and to indicate the relative importance [society] attache[s] to the ultimate decision.'" United States v. Motamedi, 767 F.2d at 1413 (Boochever, J., concurring and dissenting in part)(quoting Addington v. Texas, 441 U.S. 418, 423 (1979)).  Judge Boochever considered the three most common burdens of proof in American jurisprudence -- preponderance of the evidence, beyond a reasonable doubt, and clear and convincing evidence -- and indicated that the clear and convincing evidence standard was "appropriate in cases in which the individual's interest at stake is more substantial than mere loss of money[,] but less substantial than the consequences of a criminal conviction." United States v. Motamedi, 767 F.2d at 1414 (Boochever, J., concurring and dissenting in part)(citing Addington v. Texas, 441 U.S. at 424, 428)(internal quotation omitted).

In his analysis, Judge Boochever balanced the defendant's interest in release against society's interest in detention in the context of a case where the district court had determined the defendant was a flight risk, and concluded that "the injury to the individual from an erroneous decision is

greater than the potential harm to society." United States v. Motamedi, 767 F.2d at 1415 (Boochever, J., concurring and dissenting in part).  In reaching this conclusion, Judge Boochever pointed out that pretrial confinement did more than simply deprive a defendant of a liberty interest; detention may also imperil a defendant's livelihood, impair his family and social relationships, cause mental suffering and loss of reputation, and undermine his ultimate defense because pretrial detention "set[s] up a conflict between the defendant's desire and right to provide himself with the best defense possible and his desire to escape the unpleasantness of pretrial confinement as soon as possible." Id. at 1414.  Conversely, the risks that society face, although significant, are speculative, "because pretrial detention is based on the possibility, rather than the certainty, that a particular defendant will fail to appear." Id. at 1415.  In light of this balance, Judge Boochever determined that "due process requires that society bear a greater portion of the risk of error . . . [and that] the government must prove the facts supporting a finding of flight risk by clear and convincing evidence." Id.

Other courts that have engaged in this analysis, including district courts within the Tenth Circuit, have not spoken in terms of burdens of proof, but have viewed the factors articulated in United States v. Millan as a test that requires a court to balance competing interests based on the evidence before it.  See United States v. El-Hage, 213 F.3d 74, 79 (2d Cir. 2000)(stating that the court must weigh the factors); United States v. Gonzales, 995 F. Supp. 1299, 1303 (D.N.M. 1998)(Vazquez, J.)(holding that the court must weigh the due process factors because "there are no bright lines for determining the constitutional limits on the length of time that the government may detain a person pending trial").  Even described in this manner, however, the precise methodology for how the test should be applied, the interrelationship between the factors, and the relative weight

that should be afforded each factor, remains largely undefined by caselaw.  See United States v. Ailemen, 165 F.R.D. 571, 577 (N.D. Cal. 1996)("What is appreciably less clear, however, is the structure of the analytical process courts should use to determine, in a particular case, whether continued detention of a given defendant would violate [due process].").  This lack of defined lines and limits concerns the Court, because "[t]he weakness of any case-by-case balancing approach . . . is that it can vest excessive discretion in judges and lead to inconsistent decision-making."  Id. at 580.

The Supreme Court of the United States' opinion in United States v. Salerno and the Tenth Circuit's opinion in United States v. Theron indicate that the court must weigh the government's regulatory interests in continued detention -- and the extent to which detention serves to further those interests -- against the length of the defendant's detention, and determine whether one outweighs the other.  See United States v. Salerno, 481 U.S. at 747 n.4 (taking no position as to the specific point when a particular detention would become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goals under the Bail Reform Act).  That a long pretrial detention may violate a defendant's right to due process is clear; determining whether a particular detention has reached that point, however, is challenging, because "the Supreme Court has given us essentially no guidance about how, or through what criteria, to conduct the ultimate balancing comparison."  United States v. Ailemen, 165 F.R.D. at 579.  Furthermore, an implication derived from the opinions of various courts that have found that, at least in the context of 18 U.S.C. § 3142, release conditions that a court imposes may mitigate any threat that the defendant's release poses to the government's regulatory interests, complicates the court's constitutional analysis of a pretrial detention.  See United States v. Ojeda Rios, 846 F.2d 167, 169 (2d Cir. 1988)(referring to the defendant's willingness to accept

release conditions as support for the court's decision to release defendant); United States v. Gatto, 750 F. Supp. 664, 676 (D.N.J. 1990)("Defendants' agreement to be subject to stringent bail conditions is a factor weighing for defendants' release from pretrial detention on bail."). Cf. United States v. Orena, 986 F.2d 628, 632-33 (2d Cir. 1993)(finding house arrest, electronic surveillance, and interactions limited only to intermediate family did not alleviate defendant's danger to the community when defendant was charged with organized crime offenses executed through third parties).

In assessing how courts have applied the three due process factors within the context of the government's and the defendant's competing interests, at least one court has categorized the cases into three groups, which are roughly separated from each other by the overall length of pretrial detention. See United States v. Ailemen, 165 F.R.D. at 582, 583-89. The first group is composed of cases where the length of the defendant's detention is relatively short, between six months and a year. See id. In these cases, many courts have rejected the balancing approach and concluded that due process challenges are premature. See United States v. Tortora, 922 F.2d 880, 889 (1st Cir. 1990)(ruling detention of just over six months before trial, and prospective trial expected to last up to eight months, was not sufficient to support a due process claim); United States v. Accetturo, 783 F.2d 382, 388 (3d Cir. 1986)(holding that, in case where trial was scheduled to begin six months after detention began, due process challenges were met "farther down the procedural road"); United States v. Portes, 786 F.2d 758, 768 (7th Cir. 1985)(considering a due process challenge premature when the defendant had been detained for approximately six months at the time of the decision). In reaching this conclusion, courts seem to recognize that the exigencies of complex, modern litigation may often extend the term of a defendant's detention without fault attributable to any party. See

United States v. Accetturo, 783 F.2d at 387-88.

A group of intermediate cases involve pretrial detention between approximately one and two years. Courts faced with cases in this group typically consider all the due process factors, and apply the same balancing factors, but often place special emphasis on the government's role in causing unnecessary delay. See United States v. Orena, 986 F.2d at 631-32 (finding that nine month detention before start of trial was not a per se violation of due process, and therefore release was not warranted when government was not responsible for delay and defendant posed a substantial danger to community safety); United States v. Zannino, 798 F.2d 544, 548-49 (1st Cir. 1986)(holding pretrial detention of sixteen months did not offend due process when delay was due to defendant's medical condition, defendant was dangerous to society, and the government had done everything in its power to expedite the trial); United States v. Chen, 820 F. Supp. 1205, 1210-11 (N.D. Cal. 1992)(ordering release when the defendants had been in custody for one year, case for detention was not exceptionally strong, and delay was attributable to government appeal of court's decision to suppress evidence that the court did not feel was pertinent to government's case). This focus on the government's role in causing any delay "may reflect a feeling in some courts that they can be fairly confident that detention is being pressed primarily to achieve legitimate regulatory goals only as long as it appears that the prosecution is not unnecessarily protracting the pretrial period." United States v. Ailemen, 165 F.R.D. at 583.

At least one other district court within the Tenth Circuit has considered a case in which the government's appeal of a district court's decision to grant the defendants' motion to suppress evidence against them caused some of the delay in bringing the case to trial. See United States v. Shareef, 907 F. Supp. at 1485. In United States v. Shareef, the United States District Court for the

District of Kansas held, in a case involving defendants who had been detained for nine months at the time of the court's decision, that "[a]n appeal by the prosecution alone does not constitute delay by the prosecution for purposes of the court's consideration." Id. Without any indication that the delay in the proceedings was the responsibility of the government, or of the defendant, the district court in United States v. Shareef confined its analysis to balancing the length of the defendants' detention with the weight of the government's evidence against the strength of the evidence supporting detention. See id. at 1484-87.

Finally, at the far end of the spectrum, are cases in which pretrial detention is very long. In these cases, which include those where pretrial detention is two years or more, courts have typically upheld detention only if the government was not responsible for any significant portion of the delay and special circumstances indicated that the defendant's release would pose an extraordinary threat to the government's regulatory interests in detention. See United States v. Ailemen, 165 F.R.D. at 582-83. In United States v. El-Gabrowny, 35 F.3d 63 (2d Cir. 1994), the Second Circuit permitted the continued detention of a defendant who was expected to be detained twenty-seven months before the conclusion of trial. In finding this lengthy detention period reasonable, the Second Circuit noted that the prosecution had not unnecessarily delayed the trial. The United States had successfully opposed the defendant's application for severance, but the Second Circuit determined that its legal position in doing so was reasonable, and therefore not a cause of unnecessary of delay. See id. at 65. Furthermore, the defendant in United States v. El-Gabrowny had been accused of participating in the 1993 World Trade Center bombing, had assaulted police officers when confronted by law enforcement, and was in possession of five fraudulent passports when arrested. See id. at 64. In light of the serious, violent, and high-profile nature of the crime with which he was charged, and

-13-

evidence that he had already contemplated flight, the Second Circuit found that his extremely high risk of flight and potential dangerousness to the community warranted his continued detention.  See id. at 65.  Other courts that have considered detentions of comparable lengths have engaged in similar analysis.   See   United States v. Gonzales Claudio, 806 F.2d 334, 343 (2d Cir. 1986)(mandating release because the government's significant responsibility in causing delay outweighed significant risk of flight); United States v. Gatto, 750 F. Supp. at 675-76 (ruling release under strict conditions was appropriate when prosecution was not disproportionately responsible for delay, and circumstances suggested that release would not unduly infringe on government's regulatory interests).

On the surface, the Second Circuit's decision in United States v. Millan, the case the Tenth Circuit cited in its order remanding this issue to the Court for consideration of the due process factors, seems an exception to the general rule that release is appropriate when a defendant has endured a long detention, an expected thirty-one months in United States v. Millan, and the government is responsible for significant delay in the proceedings.  Indeed, the Second Circuit in United States v. Millan approved continued detention despite conceding that  "[t]he primary reason for the delay . . . has nonetheless been the government's failure to advise the court prior to the initial trial concerning the misconduct of certain of the agents who participated in the Millan investigation." United States v. Millan, 4 F.3d at 1045.  Despite its seemingly inapposite holding, however, the Second Circuit's methodology in United States v. Millan is not anomalous.  The Second Circuit weighed the length of the defendant's detention, and the reasons for it, against the threat the defendants' release posed to the government's regulatory interests in keeping them in custody.

The defendants in United States v. Millan were two high ranking members of a powerful

-14-

heroin distribution organization.  The Second Circuit noted that the defendants had traveled abroad extensively, had ties to foreign communities, possessed considerable financial resources, and were facing potential life sentences.  See id. at 1046.  In addition to their status as narcotics traffickers, one of the defendants had previously been convicted of criminally negligent homicide, and evidence showed that the other had "ordered numerous shootings, beatings, and a contract murder, and had issued threats against the families of witnesses who testified adversely to him at trial."  Id. at 1047. According to the Second Circuit, these circumstances indicated that the defendants' potential release posed a risk of flight and danger to the community that outweighed any role the government may have played in delaying the proceedings.  See id. at 1049.

The clear and convincing standard is not foreign to the area of criminal law.  See United States v. U.S. Dist. Ct. for C.D. Cal., 858 F.2d 534, 543 (9th Cir. 1988)(holding a defendant may avoid conviction under 18 U.S.C. § 2251(a), which prohibits the production of materials depicting a minor engaged in sexually explicit conduct, only by showing, by clear and convincing evidence, that he did not know, and could not reasonably have learned, that the actor or actress was under 18 years of age);18 U.S.C. § 17 (requiring a defendant raising an insanity defense to prove insanity by clear and convincing evidence).  It is also used in the area of detention.  See United States v. Cisneros, 328 F.3d 610, 616 (10th Cir. 2003)(ruling that, at a pretrial detention hearing, government must prove dangerousness to any other person or to the community by clear and convincing evidence); United States v. Gilgert, 314 F.3d 506, 515 (10th Cir. 2002)(holding that "a defendant who pleads not guilty by reason of insanity to making a threat against the president in violation of [18 U.S.C.] § 871 is required . . . to prove by clear and convincing evidence that his release would not create a substantial risk of bodily injury to another person, or of serious damage to the property

of another person"); 18 U.S.C. § 3142(f) (requiring clear and convincing evidence in a pretrial detention hearing to support the facts a judicial officer uses to make a finding that no condition or set of conditions can reasonably assure the safety of the community); 18 U.S.C. § 3143(a) (requiring that a person who has been found guilty of an offense and who is awaiting the imposition or execution of a sentence be detained unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community). Thus, while there is some sense that fashioning a burden of proof may be a legislative function, Judge Boochever's analysis in United States v. Motamedi is not without force and does not totally lack a basis in the standards used in this area of criminal law. Moreover, by agreeing with the Court's analysis of the statutory factors, but remanding the case for consideration of whether Cos' detention comports with due process, the Tenth Circuit has indicated that constitutional review of a defendant's pretrial detention involves a higher level of scrutiny than that which 18 U.S.C. § 3142 requires. Further, the Court recognizes that the impact of detention on Cos is real, significant, and current.

The Court is cognizant of the burdens Cos bears because of his continued detention, but it also continues to be sensitive to the United States' reasons for continuing that detention. After carefully examining the case, the Court finds that it is compelled to engage in a balancing analysis that compares the competing interests of Cos with those of society at large. Using the factors enumerated in United States v. Millan, the Court must make a judgment whether the length of Cos' detention is excessive in relation to the regulatory goals his detention aims to achieve.

The Court acknowledges that, based on the United States' representation that its appeal of the Court's suppression decision is scheduled to be heard in January 2007, Cos' pretrial detention

is likely to be at the upper-end of the intermediate range of cases the Court has categorized. Consequently, the Court agrees with those courts that have found it appropriate to pay special attention to the role of the government in causing the delay in Cos' proceedings because, without evidence that the United States is unnecessarily protracting the pretrial period, the Court will presume that detention is targeted to achieve legitimate regulatory goals. The Court will incorporate this factor into its essential task, weighing Cos' liberty interest against the significance of those goals and the threat his release poses to their achievement.

The Court acknowledges that prolonged detention weighs in favor of a detainee's release. Alone, however, it is not enough to mandate his release. See United States v. Millan, 4 F.3d at 1044 ("Length of detention 'will rarely by itself offend due process.'"). In United States v. Millan, the case to which the Tenth Circuit cited in enumerating due process factors for the Court to consider upon remand, the Second Circuit acknowledged that some cases have found constitutional violations when a detainee was held in custody for as little as fourteen months, while others have held that detention for as long as thirty-two months did not violate due process. See id.

In United States v. Gonzales Claudio, the Second Circuit considered the pretrial detention of defendants accused of bank robbery who had been in custody for fourteen months, the trial was not scheduled to begin for another four months, and the prosecution estimated that the trial would last eight months. See 806 F.2d at 341. In reaching the conclusion that due process mandated the defendants' release, the Second Circuit found it significant that the United States bore "a responsibility for a portion of the delay significant enough to add considerable weight to the defendants' claim that the duration of detention has exceeded constitutional limits." Id. at 342-43. The Second Circuit also pointed out that, although it agreed with the district court's statutory

analysis that the defendants were flight risks, it could not determine them flight risks under the constitutional standard because  there was no evidence that the defendants had ever fled from lawful authority or failed to comply with court orders.  See id. at 343.  The Second Circuit acknowledged that its ruling entailed a "serious" risk that the defendants would flee, but in weighing the various factors against each other, determined that, "of at least equal gravity is the preventive detention for fourteen months of defendants who are presumed innocent and whose trial to determine guilt or innocence will not even begin until detention has lasted eighteen months."  Id.

The Second Circuit applied the same analysis, but reached a different result in United States v. Melendez-Carrion, 820 F.2d 56 (2d Cir. 1987), a case involving the same crimes and the same prosecution as United States v. Gonzales Claudio.  The defendants in United States v. Melendez-Carrion had been in pretrial custody for nineteen months, the trial was not scheduled to begin for five months, and was expected to last eight months.  See 820 F.2d at 60.  Contrary to its analysis in United States v. Gonzales Claudio, however, the Second Circuit in United States v. Melendez-Carrion noted that additional facts that had been developed in the record convinced it "that the prosecution is not responsible for a significant portion of the delay in bringing appellants to trial, and we therefore conclude that this factor weighs in favor of a finding that appellants' due process rights are not violated by their continued pretrial detention."  United States v. Melendez-Carrion, 820 F.2d at 60.  The Second Circuit also noted that the defendants in United States v. Melendez-Carrion had a record indicating a propensity for flight and did not have strong ties to the community.  See id. at 61.  Weighing these factors against each other, the Second Circuit concluded that, "[a]lthough the duration of appellants' pretrial confinement weighs in their favor, the prosecution's lack of significant responsibility for pretrial delay and appellants['] propensity to flee even under the stricter

-18-

legal standard of <u>Gonzales Claudio</u> strongly weigh in favor of a finding that appellants' due process rights have not been violated." <u>Id.</u>

These discrepancies in the outcomes in <u>United States v. Gonzales Claudio</u> and <u>United States v. Melendrez-Carrion</u> are the result of the sensitive balancing test that the courts must apply on a case-by-case basis.  Similarly, the Court must weigh the duration of Cos' detention against the threat his release would pose to the United States' regulatory interest.

### 2.      Length of Cos' Pretrial Detention.

The first factor may include two subparts, or be, in fact, two separate factors.  The first issue may be whether the amount of time in custody is, without comparison to the projected sentence, unconstitutionally too long.  The second issue is whether the amount of time in custody is, in comparison to the projected sentence, unconstitutionally too long.

### a.      Absolute Length of Detention.

The Court recognizes that Cos has suffered an extended detention. Nevertheless, the Court is not convinced the length of detention, absolutely and without comparison to any potential sentence, has reached an unlawful level.  The length of time that Cos has been in custody triggers constitutional scrutiny, but, at this time, it does not yet offend due process.

The Court must balance the length of Cos' detention against the government's regulatory interest in his detention and the threat his release would pose to those interests.  Although the approximately sixteen months that Cos has been in custody  is a significant period of time, it is not sufficiently lengthy, when considered in the context of all the other circumstances in Cos' case, to constitute a per se violation of due process.

The United States represents that the Tenth Circuit has scheduled oral argument on its appeal

of the Court's ruling on Cos' motion to suppress for January 2007.  <u>See</u> Transcript at 26:20-22 (Walsh).  Relying on this representation, the Court is aware that, even with special handling, the Tenth Circuit is not likely to reach a decision until the middle or end of January 2007.  Consequently, if the Court detains Cos until the Tenth Circuit resolves the United States' appeal, Cos will likely be detained for at least nineteen months.  The already lengthy detention -- approximately sixteen months --  implicates the need for a heightened justification for continuing Cos' detention.

Because the detention has been more than six to nine months, Cos' request for a due process analysis is not premature.  Cos' current detention is well over one year and is approaching a year and a half.  As the Tenth Circuit recognized, Cos' demand that the Court address whether his continued detention comports with due process is appropriate and required.

At the same time, Cos' pretrial detention is less than two years and, at the present time, is closer to one year than two.  This case is similar to those intermediate category of cases in which the government must justify the continued detention.  The factor that appears to be most important to the justification is that the prosecution must not be primarily responsible for the delay.

The Court does not think this case has yet reached the level of detention that is seen in cases such as <u>United States v. Millan</u> where, regardless of the reasons for delay, only an extraordinary showing of flight risk or danger to the community will justify continued detention.  Nor does the Court think that nineteen months will push this case into that category.  Unless the Tenth Circuit does not decide this case in the early part of 2007, the Court does not believe the Due Process Clause requires Cos' release under the circumstances of this case.

For the present time, the Court believes that the most important factor is whether the prosecution has caused the delay.  If, however, the delay goes deep into 2007, for whatever reason,

the United States will need to justify detention with strong evidence that Cos is an extreme flight risk and/or a serious danger to the community.  At this point, it is sufficient to say that the length of delay does not, alone and under the circumstances of this case, require Cos' release.

### b.   Length of Detention in Comparison to Possible Sentence.

That Cos has already served a meaningful portion of any sentence he might receive if he were to be convicted calls into doubt the constitutional legitimacy of his detention.  Although "there is no clear line beyond which detention . . . becomes unconstitutional, because it is impossible to predict whether or on what charges a defendant will be convicted," the only general standard is that, "the longer a person is held . . . , the more likely it is that he has not received due process of law." United States v. LoFranco, 620 F.Supp. 1324, 1325 (N.D.N.Y. 1985).

Cos indicated to the Tenth Circuit, and repeats in the brief that he submitted to this Court on the due process issue, that his guideline range could be as low as twenty-seven to thirty-three months.  See Cos' Due Process Brief at 5.  Cos' calculation assumes a base offense level of twenty for the alleged offense, see U.S.S.G. § 2K2.1(a)(4)(A), a three offense level reduction for acceptance of responsibility, see U.S.S.G. § 3E1.1 and a criminal history category II, resulting from three criminal history points under U.S.S.G. § 4A1.1(b), see U.S.S.G. Ch. V, Pt. A (Sentencing Table). Cos acknowledges, however, that the preliminary recommended guideline sentence range the United States Probation Office ("USPO") calculated in his pretrial services report is sixty-three to seventy-eight months.  See Cos' Due Process Brief at 6; Memorandum from Melissa Pedraza and Jose N. Cordova to Hon. James O. Browning (dated October 5, 2006)("Pretrial Services Report").

Cos' calculation varies from the USPO's for several reasons.  Cos assumes a base offense level of twenty based on the charge of unlawful possession of a firearm subsequent to sustaining one

felony conviction for a crime involving violence or a controlled substance, see U.S.S.G. § 2K2.1(a)(4)(A), and a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 resulting in an offense level of seventeen.  The USPO, however, has cited two previous felony convictions for controlled substance offenses and calculated a base offense level of twenty-four pursuant to U.S.S.G. § 2K2.1(a)(2).  See Pretrial Services Report (citing State v. Cos, No. D-0202-CR-0009700455 (Second N.M. Jud. Dist. 1997); State v. Cos, No. D-0202-CR-0009702516 (Second N.M. Jud. Dist. 1997)).  The USPO's report does not deduct any levels for acceptance of responsibility.  See Pretrial Services Report.

Cos argues that his two state convictions "may be 'related' and thus considered as one sentence for guideline purposes under U.S.S.G. § 4A1.2(a)(2)."  Cos' Due Process Brief at 5.  See U.S.S.G. § 4A1.2(a)(2) ("Prior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c).").  Cos suggests that the sentences may be related because, "it is possible there was no intervening arrest between the date of Mr. Cos' first offense on May 29, 1996 and his second offense on February 18, 1997, when he was indicted for the first offense."  Cos' Due Process Brief at 5 (citing U.S.S.G. § 4A1.2 cmt. n.3 (noting that prior sentences may be related if they were not separated by an intervening arrest and were consolidated for trial or sentencing)).  The plain language of U.S.S.G. § 4A1.2(a)(2) suggests Cos' calculation of his base offense level is erroneous.  Under U.S.S.G. § 4A1.2(a)(2), prior sentences are "to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c)," the section used to calculate a defendant's criminal history category.  Nothing in the language of U.S.S.G. § 4A1.2(a)(2), or in the USPO's pretrial services report, indicates that prior sentences should be treated as one sentence for the purpose of calculating a defendant's base offense level.

If Cos' interpretation of U.S.S.G. § 4A1.2(a)(2) has merit, it is with respect to calculation of his criminal history category. Cos argues that, because his two previous sentences may be related, and therefore only one sentence under U.S.S.G. § 4A1.2(a)(2), he should be assigned only three criminal history points pursuant to U.S.S.G. § 4A1.1(a),[3] and therefore categorized as having a criminal history category II.[4]

Cos' convictions relate to separate conduct that occurred over eight months apart, but which was not separated by an intervening arrest. The first conviction stemmed from charges related to Cos' attempt to purchase a controlled substance from an officer on May 29, 2006. Cos was not, however, arrested in relation to those charges. The second conviction, which did involve an arrest, resulted from charges related to trafficking crack cocaine on February 4, 1997.

---

[3]Cos' Due Process Brief states that he should be assigned "a criminal history category II resulting from three criminal history points under USSG § 4A1.1(b)." Cos' Due Process Brief at 5 (emphasis added). Subsection (b), however, assigns two criminal history points to a defendant for each prior sentence of imprisonment of at least sixty days not counted in U.S.S.G. § 4A1.1(a), and is inapplicable to Cos' argument. Based on the Court's understanding of Cos' argument, and in the context of his argument, the Court will assume, for the purposes of its analysis, that Cos intended to assert that he would be assigned three criminal history points pursuant to U.S.S.G. § 4A1.1(a).

[4]Even if Cos is correct about whether his prior sentences should be related, the commentary to U.S.S.G. § 4A1.2, upon which he relies for his definition of "related," suggests that combining those sentences may not affect his sentence to the extent he desires.

> The Court should be aware that there may be instances in which this definition is overly broad and will result in a criminal history score that underrepresents the seriousness of the defendant's criminal history and the danger that he presents to the public. For example, if a defendant was convicted of a number of serious non-violent offenses committed on different occasions, and the resulting sentences were treated as related because the cases were consolidated for sentencing, the assignment of a single set of points may not adequately reflect the seriousness of the defendant's criminal history or the frequency with which he has committed crimes. In such circumstances, an upward departure may be warranted.

U.S.S.G. § 4A1.2 cmt. n.3.

The application notes to U.S.S.G. § 4A1.2 state that sentences not separated by an intervening arrest are related "if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing." U.S.S.G. § 4A1.2 cmt. n.3.  Given these requirements, the USPO disagrees with Cos' contention that his convictions, even though they are not separated by an intervening arrest, are related.  Because the USPO's report does not treat his two previous sentences as related, it assigns Cos six criminal history points, resulting in a criminal history category III.

In deciding whether Cos or the USPO has a better argument with regard to whether Cos' prior sentences should be considered related, the Court notes that the charged conduct occurred over eight months apart -- not on the same occasion -- and that the state court did not issue any order officially consolidating the cases for sentencing.  The Court will therefore confine its analysis to whether the conduct underlying the two offenses was part of a single common scheme or plan.

When a court considers whether prior sentences arose from a common scheme or plan, "the focus should be on 'factual commonality,' as reflected in criteria such as 'temporal and geographical proximity,' and common victims."  United States v. Wiseman, 172 F.3d 1196, 1219 (10th Cir. 1999)(finding an Idaho prison escape and an Arkansas robbery "several months" apart were not related)(quoting United States v. Shewmaker, 936 F.2d 1124, 1129 (10th Cir. 1991)(finding a drug smuggling offense and a subsequent failure to appear to serve the sentence imposed six years later were not evidence of a common plan or scheme)).  In United States v. Kinney, 915 F.2d 1471 (10th Cir. 1990), the Tenth Circuit reviewed a district court's finding that a defendant's prior convictions for his involvement in three bank robberies, which occurred within a period of less than three months, were unrelated for sentencing purposes.  See 915 F.2d at 1472.  The Tenth Circuit ruled that

the district court did not err in finding the convictions unrelated when the "[d]efendant robbed three separate banks in different locations over a three month period, the last two occurring nearly two months apart and in different states," and where "[t]he only evidence of a common scheme was defendant's own testimony about supporting his drug habit."  Id.

Although the Court recognizes that both of Cos' earlier offenses involved controlled substances, it does not believe, on the record before it, that there is sufficient factual commonality to find that they are related.  The offenses involve different substantive conduct, did not occur close in time to one another, and do not share common victims.  The Court cannot say at this time, consistent with Tenth Circuit caselaw and its own understanding of the facts, that Cos' attempt to purchase narcotics from an officer and his trafficking offense are part of a single plan or scheme.

In sum, because U.S.S.G. § 4A1.2(a)(2) does not apply to the calculation of a defendant's base offense level, and because the Court does not believe that Cos' prior sentences resulted from offenses that were part of a common scheme or plan, the Court believes that the USPO's treatment of Cos' prior convictions results in a more accurate estimation of his projected offense level and criminal history category.  The Court does agree with Cos, however, that it should include a reduction in offense level for acceptance of responsibility.  If the Tenth Circuit reverses this Court's suppression order, Cos will likely plead to the charges and receive the reduction for acceptance of responsibility.  Thus, the Court's best prediction is that Cos' offense level will be twenty-one and his criminal history category will be III.  That would yield a guideline range of forty-six to fifty-seven months.  Because the Court usually sentences at the low end of the guideline range, unless there are some unusual and compelling circumstances to go to other parts in the range, Cos' Guideline sentence is most likely to be forty-six months.  The Court would also have to engage in

analysis pursuant to <u>United States v. Booker</u>, 543 U.S. 202 (2005), and treat the sentencing guidelines as advisory.

Cos argues that, under his calculation, the United States has detained Cos for more than half of the bottom end of the presumptively reasonable guideline range. <u>See</u> Cos' Due Process Brief at 6 (citing <u>United States v. Kristl</u>, 437 F.3d 1050, 1054 (10th Cir. 2006), for the proposition that a sentence within the sentencing guideline range is presumptively reasonable). He states further that, even if his guideline range is as high as that which the Probation Office has calculated, the United States has incarcerated Cos for more than one-fourth of the bottom end of that range. <u>See</u> <u>id.</u> If the Court's predicted sentence is used, Cos has served approximately one-third of any Guideline sentence he would receive. Thus, Cos contends that, under any reckoning, the United States has kept and will keep Cos in custody for a major portion of any sentence he might receive, and therefore the extended length of detention weighs in favor of release.

Cos' situation is not without precedent in the Tenth Circuit. In <u>United States v. Shareef</u>, which the Tenth Circuit referenced in its remand order, the District of Kansas considered a due process challenge to the detention of three defendants -- Nafis Omar Shareef, William Smith, and Joseph Brown -- whose pretrial detention was nine months at the time of the court's decision. Shareef faced a projected term of imprisonment, if convicted, that could have been as low as eighteen to twenty-four months, and the other two defendants faced terms that could have been as low as thirty-seven to forty-six months. <u>See</u> <u>United States v. Shareef</u>, 907 F. Supp. at 1484. The district court in <u>United States v. Shareef</u>, although "not prepared to calculate with any degree of precision the possible terms of imprisonment to which the[] defendants would be subject under the sentencing guidelines," was thus aware that the defendants' detention approached one-half and one-

fourth of what could be the bottom end of the defendants' sentences if convicted.  Id.

The court in United States v. Shareef weighed the three due process factors and determined that Shareef should be released.  Because the district court found that neither the prosecution nor the defendants were responsible for delays in the proceedings, see id. at 1485, it reached its decision by weighing the length of Shareef's detention against the strength of the evidence supporting his detention.  The court in  United States v. Shareef noted that Shareef did not pose any  "physical threat or harm to others or the community," that his last felony conviction was approximately fifteen years earlier, and that his strong ties to the community reduced his risk of flight.  Id.

The court in  United States v. Shareef found that the evidence did not support the release of Smith or Brown. Smith had been convicted of five different felonies, had been charged with false impersonation twice within the previous year, was known to have used at least fourteen aliases, and had failed to appear in criminal proceedings on multiple occasions in the past.  See id. at 1486. Brown had been convicted of five felonies and approximately fifteen misdemeanors, had a history of drug related offenses, was known to have used at least eighteen aliases, had been unemployed for ten years, and was without family or community ties.  See id.  Brown had also been under supervised release on numerous occasions with several revocations and had failed to appear in other criminal matters.  See id.  In light of these circumstances, the court extended the defendants' detention despite recognizing that "fundamental fairness requires that defendants, presumed innocent, not be required to serve a major portion of the sentence to which he or she would be subject prior to a determination of guilt."  Id.

Because the Court believes that Cos' calculation of his projected sentence is overly optimistic, it does not believe, at this time, that Cos has served such a major portion of any sentence

he might eventually receive that his continued detention would offend due process based on that factor alone.  Congress, as the elected branch of government, has decided that the crimes with which Cos is charged are very serious offenses, and has recommended grave punishment for them. Although the current state of the law makes most of that work advisory, policy decisions are best left with the legislative branch.  In addition, despite Cos' attempt to consolidate and minimize his criminal history, it is significant and reflects numerous convictions for serious offenses.   In evaluating Cos' case, the Court cannot predict whether and on what charges Cos will eventually be convicted, and is therefore compelled to consider all of the evidence related to possible sentences, not just the optimistic calculations that Cos submits.

Finally, in light of its ruling on Cos' motion to suppress the evidence against him, it may be that the Court should also evaluate the length of Cos' detention in light of the weight of the evidence against him.  See United States v. Shareef, 907 F. Supp. at 1484 (considering a due process challenge to detention after the trial judge issued an order suppressing all of the government's evidence).  In one sense, the Court has already performed a similar examination when it considered the statutory factors supporting detention, and the Tenth Circuit approved the Court's analysis, noting that "[i]t was appropriate to downplay the significance of the suppression order by noting that the gun is still available as possible evidence."  United States v. Cos, 2006 U.S. App. LEXIS 25136, at *9. On the other hand, the Tenth Circuit expressly cited to the district court's decision in United States v. Shareef, an opinion that suggests the weight of the evidence on the merits is a factor relevant to the Court's analysis, and the Court has not previously compared the strength of the evidence on the merits against the length of Cos' detention.

When the evidence against the defendant is strong and conviction is likely, the

quantity and quality of the evidence may, in some cases, outweigh the concerns related to the period of detention. However, when the admissibility of all evidence against defendants is questionable, as here, prolonged pretrial detention must be subjected to more careful scrutiny than might otherwise be required. The court must seek to avoid the likelihood that a defendant would be required to serve nearly as long a period of imprisonment through pretrial detention as he would if found guilty of the offense, when it appears to the court that the quantity and/or quality of the evidence is problematic.

United States v. Shareef, 907 F. Supp. at 1484-85. In any case, the Court's ruling on Cos' motion to suppress heightens the level of constitutional scrutiny pursuant to which it must evaluate his continued detention, but it does not decide the matter.

> **3.     The United States' Responsibility for the Delay of Trial.**

While it is difficult to allocate months among the participants, the United States bears responsibility for some of the delay in the resolution of the case. The United States filed three motions requesting the Court reconsider its disposition on Cos' motion to suppress. To a significant extent, these motions were repetitive, raised matters that the Court had already considered, or raised new issues that the United States should have raised in its responses to the motion to suppress, requiring the Court to spend extra time responding to these arguments.

The United States did not raise its argument related to the good-faith exception to the exclusionary rule until its second motion to reconsider, see Second Motion to Reconsider at 2, and presented no legal argument as to how the exception applied until its third motion to reconsider, see Third Motion to Reconsider at 1-6. The good-faith exception to the exclusionary rule is not a novel legal doctrine that arose during the course of these proceedings, see United States v. Leon, 468 U.S. 897, 922-923 (1984)(acknowledging the existence of a good-faith exception), and thus, the United States had no excuse for not presenting such an argument before the Court's initial suppression

decision.  The United States' inefficient advocacy has delayed this Court's, and now the Tenth Circuit's,  resolution of Cos' suppression issue.

The delays in the resolution of Cos' case, however, are not entirely the responsibility of the United States.  Neither the Court, nor Cos, are blameless for all the delays in the proceedings. Almost six weeks after his initial arrest, before filing his motion to suppress, Cos filed two motions to extend deadlines or to continue proceedings indicating that his counsel needed additional time to investigate his case.  See Unopposed Motion to Extend Time for Filing Motions at 1, filed August 23, 2005 (Doc. 12); Unopposed Motion to Continue September 12, 2005 Trial Setting at 1, filed August 23, 2005 (Doc. 13).  Cos filed his motion to suppress evidence against him on September 30, 2005, more than three months after he was arrested and taken into custody.  Further, the Court recognizes that, although it expended considerable effort it resolving Cos' motion, it did not grant the motion to suppress until April 25, 2006.

It is difficult to determine the extent of the United States' responsibility for the delay in the resolution of this case.  Nevertheless, the Court must make this allocation as best it can.

The Court set trial in this matter for September 12, 2005.  The Court does not believe that any of the time before that date can be characterized as delay allocated to the prosecution; that is merely the time it takes to organize any case and conduct a speedy trial.  Thus, the first two-and-one-half months are not delay.

That being said, the nature of the charges in this case are not complicated and the players relevant to the defendant's motion to suppress were not unknown.  In light of these factors, the Court is uncertain, and Cos has not explained, why it took Cos over three months to file his motion to suppress.  The delay between September 12, 2005 and September 30, 2005 are attributable to Cos.

He asked the Court to vacate the trial so that he could file a motion to suppress. While there is nothing wrong or unusual about Cos' actions or motions, the Court cannot fairly allocate that delay to the United States.

The more difficult judgment is how to characterize the time after September 30, 2006. The United States filed a response to Cos' motion to suppress on October 18, 2005. <u>See</u> Response to Defendant's Motion to Suppress, filed October 18, 2005 (Doc. 20). Cos did not file a reply to the United States' response, and the Court held an evidentiary hearing on the motion -- which lasted three and one-half hours -- on November 2, 2005. <u>See</u> Clerk's Minutes, filed November 10, 2005 (Doc. 28).

Cos contends that he cannot be blamed for any time associated with filing what the Court considered a meritorious motion to suppress. <u>See</u> Cos' Due Process Brief at 8. The Court agrees that no one is to blame for this time incurred. This is the amount of time normally associated with such a motion, and the time it took to brief and hear the motion -- approximately five weeks -- is not an inordinate or unusual amount of time to fully brief and hear a motion that includes evidence. More important, the Court cannot allocate this time to the prosecution. The Court will not consider these two months to be delay.

Because the Court is required to state its essential findings on the record when deciding a pretrial motion involving factual issues, such as a motion to suppress, it must make findings of fact on the record and give its conclusions of law in resolving such a motion.[5] <u>See</u> Fed. R. Crim. P. 12(d). Thirty days is a reasonable amount of time to complete this task. The Court will not consider

---

[5]While the findings of fact do not have to be written, this suppression order turns heavily upon the facts. The Court needed to review the transcript in some detail.

the first thirty days after the evidentiary hearing to be delay.  The approximately five months that followed before the Court issued its ruling on the motion are delay and must be attributed to the Court.

After the Court issued its order, the United States filed three motions to reconsider.  The United States certainly was entitled to file those motions, but the Court believes that most of these arguments were repetitive of those raised earlier or could have been raised earlier.  The Court believes that the months spent dealing with the motions to reconsider did delay the case, and believes that time should be allocated to the United States.

The United States contends that it is entitled to file meritorious motions to reconsider and that the time spent doing so should not be considered delay attributable to the United States.  See Transcript at 5:17-22 (Walsh).  The Court certainly believes that the United States has the right to file its motions and does not, in any way, criticize those filings.  On the other hand, the Court does not believe that those motions were helpful and believes that they did delay the case.  Further, the Court does not believe that the United States' representations that it was not its intention to delay the case are relevant to the Court's due process analysis.  See id. at 5:7-9.

In United States v. Millan, the Second Circuit found that the prosecution's failure to advise the court, before trial, that the primary investigative agents in the case were under investigation for police misconduct was the primary reason for a significant portion of delay.  See United States v. Millan, 4 F.3d at 1045.  The Second Circuit attributed this delay to a "failure of communication in the office of the United States Attorney."  Id.  The Second Circuit did not consider whether this failure was intentional.  Nor does the Court feel intent is important.  Regardless whether the United States submitted repetitive motions to reconsider for the purpose of delaying Cos' trial, or because

-32-

it merely overlooked arguments it had already made, or should have made, in its earlier motions, the effect was the same.  The trial was delayed, and Cos remained in custody.  Accordingly, the Court finds that the United States is responsible for the delay of this case from April 25, 2006 until June 26, 2005, the date it filed its notice of appeal.

Finally, the United States has pursued its right to appeal the Court's resolution of Cos' motion to suppress.  Perhaps the most difficult allocation is for the time spent on appeal.  In one sense, no time should be allocated to the United States; any party has the right to appeal an adverse ruling.  An appeal is not a delay, but the exercise of a right Congress has granted litigants.  See United States v. Shareef, 907 F. Supp. at 1485 (holding that prosecution's appeal of the court's adverse ruling on a motion to suppress did not constitute delay).  Irrespective of that right, the Tenth Circuit has had to devote some of the United States' appeal time to the timeliness of the appeal given the United States' decision to file motions to reconsider in this Court before appealing to the Tenth Circuit.  The delay associated with dealing with that jurisdictional issue is properly allocated to the prosecution for the same reasons that the time the Court devoted to the motions to reconsider should be allocated to the prosecution.  Accordingly, the time from the Tenth Circuit's notice requiring briefing on the jurisdictional issue -- July 19, 2006 -- until the Tenth Circuit's notice that it would defer ruling on the jurisdictional issue until it considered the case on the merits --  September 25, 2006 -- or two months and one week, will be characterized as delay and allocated to the United States.

With the exception of the time discussed above, the Court will not allocate the time the motion to suppress has been on appeal to the prosecution.  The Tenth Circuit is not taking an unusual amount of time to decide the appeal and, in fact, has expedited briefing, declined in advance any

extensions of time, and set oral argument for January 2007.  At the present time, there is no delay at the Tenth Circuit -- other than the two months and one week devoted to the jurisdictional issue -- that the Court should allocate to the prosecution.  The Court will not hold any time incurred on that lawful appeal against the prosecution.

In sum, of the sixteen months that Cos has been in custody as of November 15, 2006, as much as six months may not be delay at all, but is the time that it normally takes for the parties, a trial court, and an appellate court to handle a case.  Three weeks delay should be attributed to Cos. Four months and three weeks -- about one-quarter of Cos' time in custody -- should be considered the Court's delay.  Four months and one week should be attributed as delay to the prosecution.

Because of the length of Cos' detention -- longer than those cases that have ruled due process challenges to be premature, but shorter than those that presume detention invalid unless the government is blameless for any delay -- the Court has carefully considered the reasons for delay in this case, and attempted to allocate that responsibility to the best of its ability.  The Court cannot say that the prosecution is solely, or even primarily, responsible for the time incurred or delays in this case.  While the prosecution shares a degree of culpability for the delay in Cos' case, other parties or entities are likewise culpable.  The Court believes that both parties, and itself, are partially responsible for the delay in the resolution of this case.  The Court does not believe, however, that the United States' portion of the responsibility is so significant that it rises to the level of a constitutional violation. Taking the circumstances as a whole, and recognizing that cases involving extensive motion practice and evidentiary findings require additional time by their nature, the Court does not feel that the extent of any unnecessary delay can be placed on the prosecution so much that a due process violation can be said to have occurred, or that the detention has reached a point that

it is being imposed to achieve anything other than legitimate regulatory goals.

### 4.      Detention Evidence.

While the Court is sensitive to the burdens on Cos' liberty interests that his extended detention imposes, it must also take into consideration his likelihood of flight, the safety of the community, and the other due process factors the Tenth Circuit referenced.

Cos asks the Court to consider the weakness of the case for detention.  Cos argues that the evidence that favors detention is not strong, and that conditions which the Court may impose upon his release can mitigate any danger his release poses to the United States' regulatory interests in his detention.  See Cos' Due Process Brief at 8-11.  The Court notes that it has already made findings that the evidence in Cos' case supports his detention under 18 U.S.C. § 3142, and that the Tenth Circuit, in its order and judgment remanding this case for consideration of the due process factors, stated that "[t]he district court did not err in its evaluation of the § 3142(g) factors and its decision to detain Mr. Cos pending appeal."  See United States v. Cos, 2006 U.S. App. LEXIS 25136, at *12.  At this stage in the proceedings, this factor is difficult to analyze, because the Court must be careful not to reconsider rulings on the statutory grounds supporting detention it and the Tenth Circuit have already made, yet must consider the strength of the evidence supporting detention under the stricter constitutional standard.

Cos, in his brief regarding the due process issues, takes this opportunity to reargue the statutory factors.  The Court recognizes that the strength of the evidence on which the Court based its decision to detain Cos may change based on nothing more than the passage of time.  It also recognizes that, considering its decision to suppress the evidence in this case, due process requires the Court to scrutinize the evidence to a degree that 18 U.S.C. § 3142 does not.  Given the Court's

and the Tenth Circuit's previous findings and holdings on those factors, the Court does not believe that it should reconsider those factors on this remand.

First, Cos contends that he has no ability to effect an escape to another jurisdiction, and represents that he has no place to go outside of Albuquerque. See Cos' Due Process Bried at 9.  Cos states that, before his arrest, he had an established residence with a long-term lease in Albuquerque, had at least two jobs, and regularly attended a particular church in Albuquerque. See id.  As additional support for his position, Cos points out that he has previously been on release while state controlled substance charges were pending against him in 1997, and that, during that period, he appeared in court whenever required to do so. See id. at 8-9.  Finally, Cos contends that, as a Cuban national, he faces an immigration detainer, further reducing the risk he will flee; Cos states that immigration authorities will detain him until they satisfy themselves he is not a flight or dangerousness risk. See id. at 9; Transcript 19:20-25.

As a second argument, Cos maintains that because the Court has granted his motion to suppress, it is not likely the United States will be able to prove its case at trial, substantially decreasing Cos' incentive to flee. See Cos' Due Process Brief at 3-4, 9.  Cos contends that the time he has spent incarcerated will be inapplicable to any future sentence because it is unlikely that there will be any future sentence against which to discount it. See id. at 4-5.  Cos suggests that he will therefore have served needless confinement, while jeopardizing his chances of reintegrating into society. See id. at 5.

It is true, as the United States points out, that Cos is, by these two arguments, attempting in part to reargue the Court's decision that Cos is a flight risk.  But on more careful inspection of Cos' argument, Cos is saying, implicitly, that there are competing facts and that the Court's earlier

-36-

decision was based on a balancing of competing factors.  The Court made the best decision it could on the evidence before it.

On the other hand, when the Court applies the stricter degree of scrutiny that constitutional analysis requires, the Court cannot say the evidence that Cos is a flight risk is strong.  Unlike the defendant in United States v. El-Gabrowny, there is no evidence that Cos has contemplated flight, nor does he possess expansive financial resources or have ties to accessible foreign communities like the defendants in United States v. Millan.  The evidence of flight risk satisfied the preponderance of the evidence standard, but the Court cannot say that this evidence is particularly or unusually strong, is clear and convincing, or is beyond a reasonable doubt.  Like many cases, the Court's conclusion that Cos is a flight risk was a decision made on facts that pointed in different directions, and based on evidence that raised some questions.

Here, the Court has, in evaluating the statutory factors, merely stated that the United States, by a preponderance of the evidence, has shown Cos is a flight risk.  See United States v. Raymond, 101 Fed. Appx. 331, 332 (10th Cir. 2004)(noting that the government must prove risk of flight by preponderance of the evidence).  The Tenth Circuit agreed, noting that, not only is "there [] very little information about Mr. Cos' family, about what he is doing in the community, about his employment, and about his finances," but also that "he has a prior state court conviction for drug trafficking and he violated the terms of his parole for that violation on several occasions."  United States v. Cos, 2006 U.S. App. LEXIS 25136, at *11.  At the present time, the Court continues to believe that the evidence is sufficient to justify detention.

The fact remains that outside of Cos' allegations that he has lived in Albuquerque for a considerable time, both the Court and the Tenth Circuit have been unable to develop a clear picture

of his ties to the community.  This matter has now been before the Court several times and Cos has failed to provide specific evidence, detailed information, or third-party testimony that can corroborate his contentions.  Second, Cos' criminal history involving controlled substance offenses, his past parole violations, and the nature and circumstances involving the offense with which he is now charged have not changed.  See id. at **11-12.  The Court believes that, as a result of these circumstances, Cos' proffered calculations regarding his potential sentence of imprisonment, if convicted, is overly optimistic, and that more realistic projections suggest a lengthier sentence that might serve as an incentive for Cos to flee.

If, however, the Tenth Circuit does not decide the appeal in early 2007, the Court believes that the United States will need more evidence to justify Cos' continued detention.  This evidence will have to be similar in nature to the facts applicable to Smith and Brown in United States v. Shareef, or the defendants in United States v. Millan, and given the history of this case, the Court thinks it is unlikely that such evidence exists.

Finally, Cos argues that the United States' contention that he is a danger to the community is speculative.  He notes that his previous convictions for controlled substance offenses are nine and ten years old respectively, and that his latest probation violation occurred five years ago.  See Cos' Due Process Brief at 10.  He contends that the record contains no evidence that he ever used the firearm, which is the subject of his underlying federal offense, in a dangerous manner.  See id.  Cos argues that, despite that police officers found $500.00 cash and drug distribution paraphernalia in his apartment, no drugs were ever found, and he has not been charged with a drug offense.  Finally, he represents that the state assault case that provoked the arrest warrant that initiated this case, and subsequent state child sex abuse allegations that the United States has previously relied upon as

grounds for his continued detention, have been closed.  See id.

The Court acknowledges that circumstances have changed since it last made a finding that Cos was a danger to the community, and that it must make any finding that Cos is a danger to the community based on the circumstances as they are currently, and must carefully scrutinize whether Cos' continued detention offends due process.  Admittedly, the evidence of Cos' danger to the community is weaker now that the state no longer wishes to pursue any charges against Cos.  See Pretrial Services Report; Transcript at 6:14-25 (Walsh).  The State of New Mexico's prosecutorial authorities have apparently decided he is not a danger to the community that needs to be kept off the community's streets.

Nevertheless, Cos' criminal history involving controlled substance offenses, and the nature and circumstances involving the offense with which he is now charged, have not changed. Moreover, the Court does not find Cos' argument that there is no evidence that he ever used the firearm in question in a dangerous manner to be persuasive.[6]  The Court believes, and apparently Congress agrees, that mere possession of a firearm and ammunition can be inherently dangerous. This reality is especially true for individuals who have a history of engaging in controlled substances and drug trafficking activities.  The Court is also concerned by the large amount of cash and drug paraphernalia found in Cos' apartment.  Based on this evidence, and in the context of Cos' criminal history, the Court retains a picture of Cos as an individual who engages in narcotics trafficking.  See

---

[6]The Court recognizes that in evaluating Cos' danger to the community, it is considering evidence that it has suppressed in Cos' criminal trial.  Because "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing," see 18 U.S.C. § 3142(f), "the discovery of the firearm [and the drug paraphernalia] is information that may be considered . . . regardless of its admissibility as evidence in the criminal trial."  United States v. Cos, 2006 U.S. App. LEXIS 25136, at 10.

United States v. Cos, 2006 U.S. App. LEXIS 25136, at *12 (noting that the scale found in Cos' apartment was of the type typically associated with drug trafficking); Court's August 14 Order at 2; United States v. Ridinger, 623 F. Supp. 1386, 1392 (D. Mo. 1985)("Experience establishes that transactions involving controlled drug substances and guns go hand-in-hand.").   Narcotics trafficking, by its very nature, poses a danger to society at large.  See United States v. Leon, 766 F.2d 77, 81 (2d Cir. 1985)("[I]t is clear that the harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger.'); United States v. Miller, 625 F. Supp. 513, 520 (D. Kan. 1985)(" Unquestionably, narcotics trading is recognized to be conduct of the most qualitatively harmful to society.").

     The Court does not agree that Cos' criminal history can be characterized as minimal, or that his criminal activity is so antiquated that the Court should not consider it.  Cos has two state felony convictions for serious controlled substance offenses, each carrying significant sentences.  While on probation for his state convictions, Cos tested positive for cocaine, and committed other probation violations including a battery upon a probation office security guard, and moving without permission.  See United States v. Cos, 2006 U.S. App. LEXIS 25136, at * 11-12 (holding that Cos' criminal history weighs in favor of detaining Cos pending appeal); Pretrial Services Report.

     Cos argues that the Court can fashion conditions of release that would mitigate or eliminate the threat Cos' release would pose to society's regulatory interests in his detention.  See Cos' Due Process Brief at 11.  Cos' history, however, indicates to the Court that he is an individual who has been unable to conform his conduct to the law.  He repeatedly engages in activities inherently dangerous to the community, and has proven unable to comply with the conditions of supervised release.  On the other hand, the Court acknowledges that, like the evidence of risk of flight, the

evidence suggesting Cos is a danger to the community is not as strong as the evidence in cases like United States v. Orena, where the defendant was charged with running an organized crime family, or United States v. Millan, where the defendants were accused of running a sophisticated, highly financed heroin distribution ring. Nevertheless, although there is some evidence in the record that points in a competing direction, the evidence that Cos poses a risk of danger to the community remains clear and convincing. See 18 U.S.C. § 3142(f); United States v. Raymond, 101 Fed. Appx. at 332 (holding the government must prove dangerousness to any other person or to the community by clear and convincing evidence). That evidence is sufficient for the present time. If however, Cos finds himself detained after the early part of 2007, the Court will probably be required to find the length of his detention, when compared with the circumstantial nature of the evidence, requires release.

While the length of Cos' pretrial detention triggers the Court's careful scrutiny, it is not sufficiently lengthy -- at this time -- to constitute a violation of due process independent of aggravating factors. While the United States is partially responsible for the delay in the resolution in this case, the Court is not convinced that its culpability rises to the level of a constitutional violation. Finally, the evidence in support of Cos' continued detention remains sufficient at this point in the proceedings.

The Court has carefully considered each of the factors that the Tenth Circuit has directed it to consider. In so doing, it has balanced the length of Cos' detention against the legitimate regulatory interests his continued detention is intended to achieve. At this time, the Court continues to believe that those regulatory interests outweigh the length of detention, and therefore the detention is not yet punitive. The detention does not yet violate due process. Accordingly, Cos should remain

in custody.

      **IT IS ORDERED** that the Defendant Juan Antonio Cos shall remain in custody.  There

has not yet been a due process violation.

                           _____
                           UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
  United States Attorney for the
    District of New Mexico
David M. Walsh
  Assistant United States Attorney for the
    District of New Mexico
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

Margaret A. Katze
  Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

       *Attorney for the Defendant*